**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert EDWARDS, Defendant-Appellant.**

**No. 29603.**

United States Court of Appeals,
Fifth Circuit.

April 6, 1971.

H. L. Cole, Bennett & Moon, Jim T. Bennett, Jr., Valdosta, Ga., for appellant.

Wiliam J. Schloth, U. S. Atty., Walker P. Johnson, Jr., Ronald T. Knight, Asst. U. S. Atty., Macon, Ga., for appellee.

Before BELL, DYER and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Albert Edwards was convicted in a non-jury trial of unlawfully possessing and transporting non-tax paid whiskey. 26 U.S.C. 5205(a) (2) and 5604(a). The sole question on this appeal is whether the District Court improperly denied a motion to suppress evidence of the three 5-gallon containers of whiskey found in the trunk of defendant's automobile. Holding the search of the automobile trunk and the seizure of the contraband whiskey to be reasonable in constitutional terms, we affirm.

There is no doubt in this record that defendant was guilty of the crime charged. Likewise there is no doubt that he would not have been detected in the crime, much less convicted, if the challenged search had not been made.

■ It is well established that neither the evidence found in an illegal search, nor the knowledge acquired from such a search, can be used legally in enforcing the law. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), reh. den., 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Since 1914, the Supreme Court has held that such evidence obtained by federal officers cannot be used in federal courts, Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and in 1960 the Court ruled that such evidence obtained by state officers, as in the case at bar, cannot be used in federal prosecutions. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).[1] The evidence is not excluded because it is untrustworthy or lacks credibility, but simply because it was obtained in violation of the Constitution. The exclusionary rule has nothing to do with the reliability of the fact finding process in determining guilt or innocence. It is simply a means of making effective the Fourth Amendment protection against unreasonable searches and seizures. "Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." Elkins v. United States, supra, 364 U.S. p. 217, 80 S.Ct. p. 1444; Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

A brief review of the undisputed facts readily reveals that there would be nothing in this record with which to charge defendant or to convict him of this crime if the court should have suppressed the use of the knowledge and evidence disclosed by the search.

About 9 P.M. on the evening of September 8, 1969, Officer Robert Belflower of the Georgia State Patrol was driving east on Georgia Highway 32 away from Ocilla, Georgia. He met a 1961 Pontiac automobile traveling towards town about 70 miles per hour. Because the speed limit was 50 miles per hour, Officer Belflower turned around and gave chase. The Pontiac, driven by defendant, began to go faster and faster and the officer turned on his siren and light.

By the time they were getting close to Ocilla they were "running" 110 miles per hour, and at the city limits sign, where the speed limit is 35, the defendant was going about 90. Not too far inside the city limits, the defendant "dragged his brakes a pretty good piece" trying to make a turn onto Roosevelt Street. However, he missed the turn, ran partially off the pavement, and brought his car to a stop. The tail end of the car was on the pavement, the front end about two feet from a ditch.

Then Edwards jumped from the car, leaving the lights burning and the engine running, and fled on foot. Officer Belflower chased him a short way, gave him a chance to stop, and then went back to the car. He switched off the engine, called for assistance from the sheriff's office, made a general inspection of the car, and then took the key from the ignition and opened the trunk. There he found the incriminating whiskey.

Belflower knew Edwards, recognized him, thought the car belonged to him, and was not aware that he had committed any crimes on this occasion, except those which occurred in his presence from the start to the finish of the three mile race. The officer testified that he followed

---

1. Following these cases, the Court held evidence obtained in searches and seizures by state officers in violation of the Constitution inadmissible in state court, thus closing "the only courtroom door remaining open to evidence secured by official lawlessness." Mapp v. Ohio, supra. The Court thus overruled Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and clearly established that the law is grounded upon the constitutional protection of the Fourth Amendment and is not a mere rule of evidence.

normal procedure in examining the vehicle as follows:

"Q Why did you turn the motor off and why did you do these things?

A Because he abandoned the car and I wanted to see what I had and just take inventory of what I had and make an attempt to find out whose it was, how to go about—of course I know who it was in this particular case, but that's just normal. After they abandon the car we do find out, we do look in the car."

Edwards was arrested the following day at the courthouse in Ocilla, where he was employed.

■ Under these circumstances, we hold that Officer Belflower's opening the trunk of Edwards' automobile was not an unreasonable search prohibited by the Fourth Amendment to the Constitution.[2] This case is controlled by the decision on the legality of the search, there being no question as to the propriety of the seizure, if the search was lawful. Untaxed whiskey is contraband, the very possession of which is illegal, so that the law enforcement authorities are entitled to seize and not return it, wherever found, regardless of constitutional requirements. 26 U.S.C.A. § 5613 (a) and § 5613(b); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).

Like any rule of law that depends for its application upon a test of "reasonableness," the law of search and seizure cannot be applied with mathematical precision. The nuances of seemingly comparable facts often lead to divergent results, most being sound, but producing a variety of legal opinions which tend to leave the law in apparent disarray. Modern courts find as much difficulty in ascertaining the reasonable search as their common law predecessors encountered in the search for the reasonable

man. It is sometimes impossible to clothe a particular search with the armor of specific precedent, even though "reasonable" beyond question. Such a case we have here.

A bilateral approach to this search reveals legality on two grounds. First, considering the case from the defendant's point of view, we find that by abandonment he had no Fourth Amendment right to be secure against this kind of search, at the time it was made. Second, from the Government's standpoint, we find that the search reasonably balanced the interest of the state with the defendant's civil rights in this situation.

## I.

■ Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot. At that point defendant could have no reasonable expectation of privacy with respect to his automobile.

This Court has previously approached the search and seizure problem from this "reasonable expectation" standpoint in holding that it is not an unconstitutional encroachment for police officers, if they are entitled to be on the property where the automobile is located and if they do not damage the automobile, to ascertain the correct vehicle identification number. United States v. Johnson, 431 F.2d 441 (5th Cir. 1970). Judge Wisdom has recently said, "The rationale for this holding is that an automobile owner can have no reasonable expectation of privacy with respect to the car's [vehicle identification number]," United States v. Polk, 433 F.2d 644 (5th Cir. 1970); United States v. Lowery, 436 F.2d 1171 (5th Cir. 1970).

In reasoning that "the Fourth Amendment protects people, not places," the

---

2. Amendment 4. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), hinged its decision against the Government's electronic surveillance of telephone booth conversations on the analysis that such activity "violated the privacy upon which he justifiably relied while using the telephone booth and this constituted a 'search and seizure' within the meaning of the Fourth Amendment." Id. at 389 U.S. 353, 88 S.Ct. 512.

It is clear that this personal right to Fourth Amendment protection of property against search and seizure is lost when that property is abandoned.

In Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), Mr. Justice Holmes referred to this principle in holding admissible in evidence the whiskey contents of certain containers discarded by defendant when pursued by revenue officers, and said:

"It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. The defendant's own acts, and those of his associates, disclosed the jug, the jar and the bottle—and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned." Id. at 265 U.S. 58, 44 S.Ct. 446.

In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), the Court held that the defendant had no constitutional protection against the search of a hotel room he had relinquished and against the seizure of articles he had there abandoned. Mr. Justice Frankfurter said:

"As such, however, it was entirely lawful, although undertaken without a warrant. This is so for the reason that at the time of the search petitioner had vacated the room. The hotel then had the exclusive right to its possession, and the hotel management freely gave its consent that the search be made. Nor was it unlawful to seize the entire contents of the wastepaper basket, even though some of its contents had no connection with crime. So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned, they were bona vacantia. There can be nothing unlawful in the Government's appropriation of such abandoned property." Id. at 362 U.S. 241, 80 S.Ct. 698.

In Feguer v. United States, 302 F.2d 214 (8th Cir. 1962), cert. den., 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962), Judge (now Associate Justice) Blackmun found no constitutional prohibition to a search of defendant's rented room, after defendant had gathered his desired belongings and departed never to return, saying:

"Abandonment in fact had been effected before the search. It was purposeful and voluntary and the room's search could not possibly have violated any constitutional right of the defendant." (p. 250).

A similar case, Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559 (1968), cert. den., 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1969), held that defendant had no constitutional right to protest the legality of a search of an apartment that he was found to have abandoned. In answer to the argument that this holding encroached upon the deterrence rationale of the Fourth Amendment, Judge (now Chief Justice) Burger noted that the exclusionary rule does not apply to third persons, and said:

" * * * we see no reason for treating a person who abandons property before the search any differently from a third party." (p. 565).

See Parker v. United States, 407 F.2d 540 (9th Cir. 1969).

It is interesting to compare the cases where an owner may give another such complete and unrestricted freedom over his property that he will be held to have accepted the risk that the person will consent to a search, thus losing his right to privacy. Sartain v. United States, 303 F. 2d 859 (9th Cir. 1962), cert. den., 371 U. S. 894, 83 S.Ct. 194, 9 L.Ed.2d 127; Unit-

ed States v. Eldridge, 302 F.2d 463 (4th Cir. 1962). The circumstances here were not sufficiently compelling to make involuntary the choice to abandon his car to the pursuing officer. Having done so, Edwards accepted the risk that the officer would search the car, thus losing his right to constitutional protection.

Whether or not the facts reveal a complete abandonment in the strict property-right sense is not the issue. Mr. Justice Frankfurter in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), admonishes that it is unnecessary and ill-advised to import into this law of constitutional search and seizure the subtle distinctions of private property law. Mr. Justice Goldberg in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), stresses that the Fourth Amendment is not to be applied in a hypertechnical manner but with a common sense approach.

It seems clear by any good sound ordinary sense standard that Edwards abandoned any reasonable expectation to a continuation of his personal right against having his car searched under these circumstances, and thus lost his Fourth Amendment rights, and we so hold.

## II.

Even assuming that Edwards did not lose but retained some Fourth Amendment rights in the automobile, we believe that the search by Belflower passes the test of reasonableness under constitutional standards. As in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), this case does not involve police conduct subject to the Warrant Clause of the Fourth Amendment. The distinction is succinctly stated by Chief Justice Warren as follows:

"If this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether 'probable cause' existed to justify the search and seizure which took place. However, that is not the case. We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure, see e. g., Katz v. United States, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967); Beck v. Ohio, 379 U.S. 89, 96 [85 S.Ct. 223, 13 L.Ed.2d 142] (1964); Chapman v. United States, 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828] (1961), or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances, see e. g., Warden v. Hayden, 387 U.S. 294 [87 S.Ct. 1642, 18 L.Ed.2d 782] (1967) (hot pursuit); cf. Preston v. United States, 376 U.S. 364, 367–368 [84 S.Ct. 881, 11 L.Ed.2d 777] (1964). But we deal here with an entire rubric of police conduct— necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Id.* at 392 U.S. 20, 88 S.Ct. 1879.

Of course, any search without a warrant places upon the Government the burden to convince the court that it was reasonable under all of the facts and circumstances.

In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1969), Mr. Justice White for the Court states:

"Unfortunately, there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Id.* at 387 U.S. 536, 537, 87 S.Ct. 1735.

The Supreme Court early recognized the difference in the standard that should be applied to automobiles, as compared to houses and other stationary structures. Carroll v. United States, 267

U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). United States v. Roberts, 434 F.2d 1016 (5th Cir. 1970).

An automobile may be searched without a warrant in a variety of circumstances. It is now clear that a policeman, entitled to be on the property where the car is located, may search a vehicle to determine the identity of its owner. Kimbrough v. Beto, 412 F.2d 981 (5th Cir. 1969); United States v. Jackson, 429 F.2d 1368 (7th Cir. 1970); United States v. Lipscomb, 435 F.2d 795 (5th Cir. 1970).

It is not unreasonable to search a car which is validly held for use as evidence in a forfeiture proceeding. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Automobiles coming into the lawful custody of the police may be searched without a warrant for the purpose of inventorying the contents and providing for their safekeeping, without having probable cause to believe that evidence of a crime will be discovered. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

A warrantless search of an automobile at a police station after an arrest elsewhere is constitutionally permissible, although the persons under arrest were in custody at the time and there was ample opportunity to obtain a warrant. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The facts of this case must be viewed in the light of these precedents. The record discloses essentially a combination of four factors: (1) the initial speeding which gave legality to the chase by the state trooper; (2) the increasing speed to 90–110 miles an hour in an obvious effort to outrun the police and escape arrest; (3) the abandonment of the automobile on the public right-of-way, partly on and partly off the pavement with the lights on and motor running, with the obvious knowledge that it would come into possession of the law enforcement officers; and (4) the flight from the scene on foot into the night and remaining at large.

Confronted with this situation, it would have been unreasonable not to make some inspection of the automobile. The key being readily available, the trunk could be inspected as a part of the car within the bounds of reason. This inspection was properly a part of the on-the-scene investigation that the officer was duty bound to carry out.

This case does not conflict with our recent holding that a general exploratory search is not justified on the arrest for a mere traffic violation. United States v. Adams, 424 F.2d 175 (5th Cir. 1970). See also Amador-Gonzalez v. United States, 391 F.2d 308 (5th Cir. 1968). Officer Belflower was obviously dealing with a problem that was more than a mere traffic violation.

Under the circumstances of this case we cannot hold unreasonable under the Fourth Amendment the inspection or search of the car for the purpose, as Belflower put it, "to see what I had."

### III.

In support of his position to suppress the evidence found in his car, appellant cites Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), reh. den., 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); United States v. Irwin, 86 F. Supp. 362 (W.D.Ark.1949); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); United States v. Birrell, 243 F.Supp. 36 (S.D.N.Y.1965). We do not find these authorities sufficiently persuasive to justify a reversal in this case.

Preston, Stoner and Chimel all deal with searches incident to arrest. The Government conceded in its brief that

Officer Belflower's search of defendant's automobile was too remote in time and place to be considered as incident to arrest. Cooper v. California, *supra*; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir. 1968). We need not decide whether a general exploratory search would have been reasonable under the other facts of this case if defendant had remained in possession of his car, there to be arrested for his various automobile violations.

*Carroll* and *Brinegar* are prohibition cases which justified the search on the probable cause which the officers had to believe that the crime of transporting illegal liquor was being committed. There is no attempt here, nor could there be any under these facts, to justify the search on the officer's belief that the car contained untaxed whiskey. He had no reason to so believe, and his search was not so motivated.

*McDonald* involved a rooming house search where the defendant had been under surveillance for two months and there appeared to be no reason for the failure to obtain a search warrant.

In *Irwin*, the District Court noted that "Irwin did not try to elude the officers." (p. 364). In *Birrell*, the District Judge merely refused to hold *as a matter of law* that a fugitive from justice abandons all of his property in the place from which he fled, and thereby subjects the property to search and seizure. No automobile search was involved in *Birrell*, and our holding here in no way reflects on the sound principle applied by the trial judge in that case.

We need not reach the outer limits of the maturing law of search and seizure to hold that the District Court committed no error in denying the motion to suppress on the ground that there was no violation of Edwards' Fourth Amendment rights.

Affirmed.