COMMONWEALTH vs. JOHN H. BATTLE.

Suffolk.    October 10, 1973. — December 4, 1973.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*"Threshold" Police Inquiry. Arrest. Search and Seizure. Probable Cause.*

Where it appeared in a narcotic drugs prosecution that a police officer, who was experienced in narcotics arrests, while patrolling in a marked police cruiser in an area known to him to be a center of drug traffic, observed a poorly dressed person handing or attempting to hand money to the well dressed defendant and saw both men flee into a building upon noticing the slow approach of the police cruiser, there was reason to suspect the two "of unlawful design" within the meaning of G. L. c. 41, § 98, and to momentarily detain the defendant in the hallway of the building long enough to retrieve and examine "something" which the officer noticed the defendant throw away during the pursuit, and which turned out to be glassine bags, and, in view of experience of the officer in the packaging of heroin, the glassine bags provided probable cause to arrest and search the defendant without a warrant; and the glassine bags, containing heroin, and amphetamine pills and money discovered in the search of the defendant were properly admitted in evidence at trial. [581-583]

INDICTMENTS found and returned in the Superior Court on November 20, 1972.

The cases were tried before *McGuire, J.*

*Howard Maury Rochestie* of Washington, D.C. (*Francis John Stolarz* with him) for the defendant.

*Richard E. Rafferty,* Assistant District Attorney, for the Commonwealth.

GRANT, J.    The defendant has been convicted by a jury on separate indictments charging him with unlawful possession with intent to distribute (1) heroin and (2) a derivative of barbituric acid. The assignments of error (G. L. c. 278, § 33D) are addressed to the trial judge's refusal to strike certain testimony and to suppress certain

items of physical evidence obtained in the circumstances hereinafter described.

There was no pre-trial motion to suppress such as is contemplated and (in most cases) required by Rule 101B of the Superior Court (as amended effective June 1, 1971). The first day of trial was devoted exclusively to the testimony of Officer Kenefick of the Boston police, and it was in the course of that testimony (taken largely without objection by the defendant[1]) that there were introduced in evidence the four glassine bags of heroin, the three amphetamine pills and the $161 in currency which are now in dispute. Kenefick was excused as a witness at the conclusion of the day. At the opening of the second day counsel for the defendant presented an oral motion to strike Kenefick's testimony "relative to the seizure of the evidence, the arrest of the defendant, based on . . . what Mr. Kenefick testified to" and asked that the "evidence so gathered be suppressed." Following a confusing colloquy the judge denied the motion, subject to the defendant's exception. He made no findings, nor did he give any reason for his action. As we cannot say with certainty whether the denial was grounded (1) on very clear noncompliance with the provisions of Rule 101B (see *Commonwealth* v. *Cooper,* 356 Mass. 74, 78-79 [1969]; *Commonwealth* v. *Moore,* 359 Mass. 509, 512 [1971]) or (2) on a ruling that the disputed evidence had not been illegally obtained, and as it will not affect the ultimate disposition of the case, we shall proceed to consider whether the motion was properly denied on the latter ground. See *Commonwealth* v. *Cooper,* 356 Mass. 74, 80 (1969); *Commonwealth* v. *Teta,* 358 Mass. 814 (1971).

The following is a summary of the material facts which the trial judge would have been warranted in finding on the Kenefick testimony, and which, if we are to consider the constitutional questions argued, we must assume were found.[2]

---

[1] Such exceptions as were taken were based on grounds no longer argued.

[2] We have in mind that the defendant had the burden of proving that the evidence he sought to have suppressed was the fruit of an illegal search.

At approximately 8:00 P.M. on August 3, 1972, while there was still daylight, Kenefick, who had been a policeman for four years and who had made approximately 200 arrests for narcotics violations, and two other uniformed police officers were on patrol in a marked police cruiser in an area of Boston which was known to Kenefick as a center of drug traffic.[3] As the officers cruised along Blue Hill Avenue at a rate of five miles an hour or less they observed the defendant and another man, later identified as one Earl Smith, standing on the front steps of an apartment building at No. 503 Blue Hill Avenue. The defendant was well dressed; Smith was poorly dressed. Smith was holding out his hand in the direction of the defendant, whose back was toward the officers; Kenefick observed folded green bills in the outstretched hand. The defendant and Smith, on seeing the cruiser creeping up the street in their general direction, darted into the apartment building. At this point Kenefick, from his "past experience as a police officer," regarded the defendant and Smith as "suspects." The cruiser was stopped, Kenefick and a partner alighted, and the two officers rapidly pursued the defendant and Smith into the building.[4] At some point during the pursuit, quite probably as Kenefick was entering the building, he saw the defendant throw (or "flip") "something" to the floor of the hallway. Kenefick caught up with the defendant, pinned him to the wall, and retrieved the "something" from the floor. The "something" turned out to be four glassine bags which Kenefick did not open at that point but which, based

---

*Commonwealth* v. *Fancy,* 349 Mass. 196, 202-203 (1965). *Commonwealth* v. *Pignone,* 361 Mass. 566, 568 (1972).

[3] The information as to the area's being a center of drug traffic was volunteered by Kenefick in an unresponsive answer to a question put to him by the assistant district attorney. The court allowed the defendant's motion to strike such testimony. The defendant now suggests (in his brief) that it would not have been improper for the trial judge to have considered such testimony in determining the motion to suppress. We vicariously accept the suggestion.

[4] The partner may now be phased out of our scenario. He devoted his attention chiefly to Smith; he testified at the defendant's trial, but not until after the court's disposition of the motion to suppress.

on his experience with the illicit packaging of heroin, he believed did contain that drug.

Kenefick thereupon handcuffed the defendant, took him to the police station, read him the *Miranda* warnings, booked him for violation of the controlled substance law, searched him, and discovered four pills believed (and subsequently determined) to be an amphetamine, and $161. The four glassine bags and their contents (subsequently determined to be heroin), three of the pills,[5] and the money were admitted in evidence at trial (see fn: 1).

We are of opinion that when Kenefick alighted from the cruiser he was initiating a justifiable threshold inquiry of suspicious conduct. He was a man experienced in narcotics arrests (see *Commonwealth* v. *Snow,* 363 Mass. 778, 789 [1973]) in an area known to him to be a center of drug traffic (compare *Commonwealth* v. *Lehan,* 347 Mass. 197, 199 [1964]; *Commonwealth* v. *Matthews,* 355 Mass. 378, 379, 381 [1969]); he had seen a poorly dressed person handing or attempting to hand money to the well dressed defendant (compare *Commonwealth* v. *Mitchell,* 353 Mass. 426, 427, 428-429 [1967]); and he had observed the defendant and Smith flee into the building upon their noticing the slow approach of the police cruiser (compare *Commonwealth* v. *Brown,* 354 Mass. 337, 348 [1968]; *Commonwealth* v. *Snow,* 363 Mass. 778, 789 [1973]). At that point Kenefick could (and we must assume the trial judge found that he did) reasonably suspect the defendant and Smith "of unlawful design" within the meaning of G. L. c. 41, § 98 (as most recently amended by St. 1970, c. 181),[6] that is that either or both had committed, were committing or were about to commit a crime (see *Commonwealth* v. *Wilson,* 360 Mass. 557, 559-560 [1971]). Kenefick's suspicion could hardly have been dispelled by the sight of the defendant's

---

[5] One of the pills was consumed in the course of a chemical analysis subsequently made by the police.

[6] "[P]olice officers of all cities and towns . . . may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going . . .."

attempt to throw away "something" he so obviously did not wish an officer to find on his person.

In these circumstances Kenefick was justified in momentarily detaining the defendant in the hallway of the building, long enough to retrieve the "something" from the floor and to examine it briefly. *Adams* v. *Williams,* 407 U. S. 143, 146 (1972). *Commonwealth* v. *Lehan,* 347 Mass. 197, 202-204 (1964). *Commonwealth* v. *Matthews,* 355 Mass. 378, 379-381 (1969). *Gaines* v. *Craven,* 448 F. 2d 1236, 1236-1237 (9th Cir. 1971).[5] On the basis of his experience with the packaging of heroin Kenefick could (and we must again assume the judge found that he did) reasonably conclude that the bags contained heroin. Once that conclusion was reached, there was probable cause to believe that the defendant had committed a felony. At that point Kenefick was justified in arresting the defendant without a warrant (*Commonwealth* v. *Holmes,* 344 Mass. 524, 525 [1962]; *Commonwealth* v. *Blow,* 362 Mass. 196, 198 [1972]; *Commonwealth* v. *Snow,* 363 Mass. 778, 787-788 [1973]), and no further threshold examination of the defendant was necessary.

The amphetamine pills and the $161 were taken from the defendant during the course of a lawful search incident to and conducted as soon as practicable following a valid arrest. *Commonwealth* v. *Holmes,* 344 Mass. 524, 525 (1962). *Commonwealth* v. *Lehan,* 347 Mass. 197, 206 (1964). *United States* v. *DeLeo,* 422 F. 2d 487, 491-493 (1st Cir. 1970), cert. den. 397 U. S. 1037 (1970).

*Judgments affirmed.*

---

[7] Kenefick's act in picking up the glassine bags did not constitute a search of the defendant within the meaning of the Fourth Amendment to the Constitution of the United States. The defendant had voluntarily given up all control over the bags and could have no expectation of privacy with respect thereto. *Hester* v. *United States,* 265 U. S. 57, 58 (1924). *Abel* v. *United States,* 362 U. S. 217, 240-241 (1960). *Commonwealth* v. *Lewis,* 346 Mass. 373, 381-382 (1963), cert. den. sub nom. *Lewis* v. *Massachusetts,* 376 U. S. 933 (1964). *United States* v. *Edwards,* 441 F. 2d 749, 751-753 (5th Cir. 1971). The defendant had no right of privacy in the hallway. *Commonwealth* v. *Thomas,* 358 Mass. 771, 773-775 (1971).