**UNITED STATES, Appellant,**

v.

,Raymond F. **BOSWELL**, Appellee.

No. 8617.

District of Columbia Court of Appeals.

Argued March 12, 1975.

Decided Oct. 31, 1975.

David R. Addis, Asst. U. S. Atty., with whom Earl J. Silbert, U.S. Atty., John A. Terry, James F. McMullin and Tobey W. Kaczensky, Asst. U.S. Attys., were on the brief, for appellant.

Simon L. Weker, Washington, D.C., appointed by the court, for appellee.

Before KELLY and YEAGLEY, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

The United States appeals, pursuant to D.C.Code 1973, § 23–104(a)(1),[1] from a ruling granting appellee's pretrial motion to suppress evidence allegedly obtained by an unconstitutional search and seizure. The factual predicate for the ruling is that early on Christmas afternoon of 1973, Metropolitan Police Detective Anthony H. Johnson observed appellee Raymond Boswell walking rapidly down a city block in the vicinity of 25th Street and Pennsylvania Avenue, N.W. Johnson's attention was attracted to Boswell because he was carrying a large object wrapped in a blue blanket and was accompanied by a man who appeared to be very drunk.[2] Although then off duty, Johnson nevertheless watched as both men proceeded along Pennsylvania Avenue for about a hundred yards. At that point, Boswell stopped and placed the blanket covered object in the hallway of a building at 2511 Pennsylvania Avenue, N.W. He then left the hallway, went directly next door to a laundromat, and made a telephone call. Meanwhile, his companion wandered off down the street.

Johnson used this opportunity to investigate his suspicion that criminal activity was afoot. Unobserved by either Boswell or Griffith, he entered the hallway and by lifting the blanket, discovered underneath a Sony color television. He immediately copied down the serial number of the television, left the hallway, and called the police station. After a quick computer check, Johnson learned that the television had not been reported stolen. He then returned to the front of 2511 Pennsylvania Avenue, approached Griffith and asked what he was doing with the television. Griffith replied that he wanted to sell it. Johnson asked the price, but before any answer was given, he identified himself as a police officer. Boswell joined the discussion about this time and Johnson asked how the television had been obtained. Each man gave a different and conflicting answer. The encounter ended with Johnson writing down their names and addresses.

The following day William R. Herman reported his apartment burglarized and the theft of a Sony color television bearing the same serial number that Johnson had copied on Christmas Day. Additionally, he reported as stolen a blue blanket, a money clip, a 1968 Yale class ring, a house key and a television antenna. Based on the information he had previously obtained, Johnson swore out a warrant for Boswell, who was arrested shortly thereafter and indicted for second degree burglary, grand larceny and receiving stolen goods (D.C.Code 1973, §§ 22–1801(b), –2201, and –2205). When arrested, Boswell did not have the television but he was wearing a Yale class ring bearing the complainant's initials.[3]

1. D.C.Code 1973, § 23–104(a)(1) provides: The United States or the District of Columbia may appeal an order, entered before the trial of a person charged with a criminal offense, which directs the return of seized property, suppresses evidence, or otherwise denies the prosecutor the use of evidence at trial, if the United States Attorney or the Corporation Counsel conducting the prosecution for such violation certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and the evidence is a substantial proof of the charge pending against the defendant.

2. The man was appellee's cousin, Earl Griffith. He was originally a codefendant but charges against him were dropped.

3. It is not clear from the record whether the television was ever recovered.

In a pretrial motion Boswell moved to suppress all evidence, and in particular the serial number, obtained as a result of his Christmas Day encounter with Johnson. After a hearing at which Johnson, Boswell and two occupants of one of the two apartments at 2511 Pennsylvania Avenue, N.W., (one being Boswell's brother-in-law), testified the court granted the motion.

■ The government advocates two theories to sustain Johnson's search and seizure of the serial number. First, it contends that Boswell abandoned the television and consequently lacks standing to question the legality of the search. Second, it argues that even absent abandonment, the search was nonetheless reasonable and not proscribed by the Fourth Amendment. In advancing both theories the government relies principally on Johnson's pretrial testimony describing the "articulable suspicions" that caused him to think a crime might have been committed. These articulable suspicions were that Boswell was carrying a large covered object; that Boswell appeared tired, yet he did not stop to rest; that the covered object was left unattended in the hallway; and that he, Johnson, had recently investigated several daytime burglaries in the area. However, in all appeals which concern the application of Fourth Amendment principles, it is crucial to consider and weigh all relevant circumstances surrounding its alleged infringement. Thus, there are several other factors which must be noted; namely, Johnson had no knowledge of any burglary in the area on that day; it was daylight, about 1:00 p.m.; Johnson could not discern the object being carried was a television; Johnson observed Boswell for only a short distance, about one hundred yards; the hallway in which the television was left is in the same building and only twenty to thirty feet from the laundromat; and Johnson, although the government relies on abandonment, did not actually seize the television.

The issue is not the propriety of Johnson's investigating suspicious behavior but rather whether his action of removing the blanket to determine what it concealed and his copying the serial number is, in the circumstances described, a permissible investigative step under the Fourth Amendment.

■ In meeting that issue, it is first necessary to determine whether or not a search and seizure occurred. Johnson's observation of Boswell on the street and his viewing the blanket covered object in the hallway were not, of course, a search and seizure since:

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . [Citation omitted.]" [4]

On the other hand, Johnson's removal of the blanket was a search for evidence and his copying the serial number was a seizure. It was a search because neither the television nor its serial number were visible to the naked eye and Johnson's sole motivation was an expectation of finding criminal evidence. Although the television was not seized, the copying of the serial number, under these circumstances, was a seizure.[5]

■ The government contends that by leaving the blanket covered object in the hallway Boswell evidenced an intent to abandon it and he therefore lacks standing to raise the Fourth Amendment issue. It is true that one who abandons property does, indeed, lack standing; however,

---

4. *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

5. *United States v. Sokolow*, 450 F.2d 324 (5th Cir. 1971) (copying the serial numbers of air conditioners is a seizure); *United* States v. Gray*, 484 F.2d 352 (6th Cir. 1973), cert. denied, 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974) (copying rifle serial numbers is a seizure).

"[a]bandonment is an ultimate fact or conclusion based generally upon a combination of act and intent. How did the person who was supposed to have abandoned the property act, that is, what did he do, and, second, what was his intention?" [6] The critical factor is intent, and as one court has observed:

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. . . . All relevant circumstances existing at the time of the alleged abandonment should be considered. . . . The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. . . . [Citations omitted.] [7]

Implicit in a determination of abandonment is the concept that the "Fourth Amendment protects people, not places" [8] and that wherever a citizen has a reasonable "expectation of privacy" [9] he is entitled to be free from unreasonable governmental intrusion. There is no doubt that a citizen carrying a covered object on the street has a reasonable expectation of privacy and that it should be honored. This court said in *Campbell v. United States*, D.C.App., 273 A.2d 252, 255 (1971):

Our often criticized society has not yet deteriorated to the point where we can say that a man who carries openly, on the street, a large household appliance is probably a thief.

Such logic applies equally to a person carrying a covered object on the street.

Nevertheless, the government argues that by placing the object in the hallway while he went next door to make a telephone call, Boswell relinquished his reasonable expectation of privacy. The government is correct, but only if from all the circumstances, an intent to abandon is reasonably inferable. And as we wrote in *Peyton v. United States*, D.C.App., 275 A. 2d 229, 230 (1971), quoting from *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir.), *cert. denied*, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965):

" * * * An abandonment must be made to appear affirmatively by the party relying on it, and an intention to abandon will not ordinarily be presumed, and this is particularly true if the conduct of the owner can be explained consistently with a continued claim. Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence."

Boswell's actions evidenced an intent, if any, to secrete the television and not to abandon it. Johnson's response was not to seize an abandoned television, but rather to determine if it had been stolen. Apparently Johnson, who was the only eyewitness to Boswell's actions, did not believe the television was truly abandoned. Indeed Johnson's brief observation of Boswell (his carrying the object one hundred yards), the proximity of Boswell (next door, twenty to thirty feet away), and the reason for leaving the object (to make a telephone

---

6. *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir.), *cert. denied*, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965). *Accord, Peyton v. United States*, D.C.App., 275 A.2d 229, 230 (1971); *Parman v. United States*, 130 U.S.App.D.C. 188, 194, 399 F.2d 559, 565, *cert. denied*, 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968).

7. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973).

8. *Katz v. United States*, *supra* at 351, 88 S.Ct. at 511.

9. *Id.* at 361, 88 S.Ct. 507 (Mr. Justice Harlan, concurring).

call) do not reasonably allow an inference of an intent to abandon.[10] Accordingly, on its first theory for urging reversal, the government has plainly failed to meet the standard in *Peyton v. United States, supra,* that abandonment must be shown by clear, unequivocal and decisive evidence.

■ The government's second basis for sustaining Johnson's search and seizure is that it was not unreasonable within the meaning of the Fourth Amendment and, therefore, not prohibited. On this very point the Supreme Court stated in *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971):

> Thus the most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it." . . . [Footnotes omitted.]

In this case the government does not rely on any constitutionally recognized exception to the warrant requirement. It argues the search and seizure is reasonable in light of Johnson's "specific articulable suspicions" that a crime might have been committed. Thus, it relies, by analogy, on the rationale of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), to uphold the reasonableness of the search and seizure. Unquestionably, the police may stop a citizen on the street if they have a suspicion based on "specific and articulable *facts*"[11] [emphasis added] that a crime has been or is about to be committed. Such a stop is reasonable and, further, the police may execute a protective frisk if they believe the person is armed.[12] A *Terry* stop often discloses probable cause to arrest and thus justifies a full search incident to a lawful arrest.

■ In this case, however, we are not confronted with the traditional *Terry* stop. The search and seizure complained of occurred before any contact between Johnson and Boswell. It is, of course, fruitless to speculate what Johnson might have discovered if he had stopped Boswell, identified himself as a police officer, and asked what he was carrying. We comment on what did not happen because this court has consistently upheld the admissibility of evidence which is obtained as a result of an on-the-street investigative stop conducted within constitutional guidelines.[13] We

10. The dissent, citing *Smith v. United States,* D.C.App., 292 A.2d 150 (1972), states that intent is an irrelevant factor in determining abandonment. However, in that case, and in others cited by the dissent, objects were thrown away or discarded in anticipation of a police arrest or interrogation. The thesis rejected in *Smith* was that appellant's subjective intention to later retrieve a pistol hurled away during a police chase was irrelevant. Appellant's actions viewed objectively evidenced an intent to abandon the pistol.

The court further stated in *Smith* at 151 n. 4 that:

> It is clear in this jurisdiction that where incriminating evidence is discarded in a public area in anticipation of a police investigation, the fourth amendment does not set limits on its recovery by the police, even where what is exposed to public view is not itself evidence of a crime. [Citations omitted.]

Thus, the circumstances in this case are factually distinct from *Smith v. United States, supra.*

11. *Terry v. Ohio, supra* at 22, 88 S.Ct. 1868.

12. *Id.* at 30, 88 S.Ct. 1868.

13. *Wray v. United States,* D.C.App., 315 A.2d 843 (1974); *Stephenson v. United States,* D.C.App., 296 A.2d 606, *cert. denied,* 411 U.S. 907, 93 S.Ct. 1535, 36 L.Ed.2d 197 (1973); *Jones v. United States,* D.C.App., 286 A.2d 861 (1972).

have also upheld the exclusion of evidence obtained in violation of such guidelines.[14]

▮ Here, Johnson was faced with two courses of action: one constitutional, the other expedient. He chose expediency. Since the television was not abandoned and since a person carrying a covered object on the street has a reasonable expectation of privacy, if the court were to uphold Johnson's conduct it would by implication sanction on-the-street warrantless searches of a person's effects based on a police officer's suspicion or hunch. Such a justification for a search was flatly rejected in *Terry v. Ohio, supra* at 22, 88 S.Ct. 1868. Certainly street encounters are one of the recognized exceptions to the warrant requirements of the Fourth Amendment, but the Supreme Court has cautioned:

> The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . . So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. [Footnote and citation omitted.] [15]

We see no necessity to expand the right of the police to safely investigate suspicious behavior to include the power to conduct a warrantless exploratory search for evidence based on suspicion alone. For as the Court stated of the Fourth Amendment in *Terry v. Ohio, supra* at 8–9, 88 S.Ct. at 1873:

> This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. . . .

The court's ruling granting appellee's motion to suppress is [16]

*Affirmed.*

PAIR, Associate Judge (dissenting):

I cannot agree with my colleagues that there was any unconstitutional search and seizure in this case.

It seems to me that in determining the legality of the alleged search and seizure, three questions are presented: (1) whether there was in fact and in law an abandonment of the property in question, (2) whether the hallway where the alleged search and seizure took place was a constitutionally protected area, and (3) whether under the circumstances the appellee had a reasonable expectation of privacy.

Relying upon *Peyton v. United States,* D.C.App., 275 A.2d 229, 230 (1971); *Friedman v. United States,* 347 F.2d 697, 704 (8th Cir.), *cert. denied,* 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965); *United ed States v. Colbert,* 474 F.2d 174, 176 (5th Cir. 1973), my colleagues have concluded that the evidence in the case at bar was insufficient to establish that the appellee intended to abandon the television set in the hallway. The cases relied upon by the majority are distinguishable on their facts. In *Peyton v. United States, supra,* it was claimed, as a defense to a charge of larceny, that cartons of matches unloaded from a delivery truck and placed on the sidewalk at the front of a drug store had been abandoned. This court held that there was no evidence whatsoever that the property had been abandoned by the drug store.

Involved in *Friedman v. United States, supra,* was the question whether property, left in leased premises after the lessee quit

---

14. *Coleman v. United States,* D.C.App., 337 A.2d 767 (1975).

15. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

16. The class ring bearing complainant's initials was obtained as a direct consequence of the illegal search and seizure on Christmas Day and must be suppressed under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

the premises owing back rent, had been abandoned. Holding that there had been an abandonment of such property, the court relied principally upon the holding in a civil action for replevin.[1] In this connection, however, it has been repeatedly pointed out that the "subtle distinctions . . . of private property law" are not to be applied to the determination of search and seizure issues. *Smith v. United States,* D.C.App., 292 A.2d 150, 151 (1972); *Jones v. United States,* 362 U.S. 257, 266, 80 S.Ct. 725, 733, 4 L.Ed.2d 697 (1960); *United States v. Edwards,* 441 F.2d 749, 753 (5th Cir. 1971).

In *United States v. Colbert, supra,* the question presented was whether the defendants had abandoned two briefcases left by them on the public sidewalk as they were approached by police officers for questioning. Holding that there had been a pre-search abandonment of the briefcases which deprived the defendants of standing to complain of the search and seizure of the articles, the court said:

> The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, *left behind,* or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. . . . [*Id.,* 474 F.2d at 176; emphasis supplied.]

The majority opinion places great stress upon the necessity of establishing an intent to abandon. This court, however, has made it clear that the question of the defendant's intent is irrelevant. Thus, in *Smith v. United States, supra,* where the appellant threw away a revolver as he was being pursued by a police officer and the defense contended that he had not abandoned it but intended to return and retrieve it, this court declared that:

> On the abandonment issue, the question of whether or not appellant intended eventually to return and retrieve the revolver is irrelevant. By removing this article from his coat pocket and tossing it into the street, he had obviously given up its possession by leaving it in a public place where it might have been discovered and picked up by any passerby. . . . [*Id.,* 292 A.2d at 151.]

Other cases decided by this court, none of which are mentioned in the majority opinion, also involved the question of abandonment. In *United States v. Smith,* D.C.App., 293 A.2d 856 (1972), the defendant was observed with a companion in a public toilet stall. When the officers ordered the two men out of the stall, a pouch containing articles usually employed for the injection of narcotics was dropped on the floor. The subsequent search and seizure of this pouch was held permissible on the ground that the pouch was abandoned property. Somewhat to the same effect was *Campbell v. United States,* D.C.App., 273 A.2d 252 (1971) (cited for different point in the majority opinion). In that case appellant and a companion were observed on a public sidewalk. Appellant was holding a screwdriver and his companion was carrying a television set. As police officers approached, appellant dropped the screwdriver and this court said in a footnote at 253 that the screwdriver was clearly abandoned property, properly subject to seizure by the police. And in *Brown v. United States,* D.C.App., 261 A.2d 834 (1970), this court upheld the seizure of a shopping bag which the appellant had dropped at the approach of the police, holding that "the officers' recovery of the bag was not a 'seizure' in the fourth amendment sense, but merely a retrieval of abandoned property." *See also Keiningham v. United States,* 113 U.S. App.D.C. 295, 307 F.2d 632 (1962); *Lee v. United States,* 95 U.S.App.D.C. 156, 221 F.2d 29 (1954).

---

1. *Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431 (8th Cir. 1952).

In *United States v. Brown,* 473 F.2d 952 (5th Cir. 1973), the defendant buried, under a chicken coop on an abandoned farm, a suitcase containing the loot from a bank robbery. Acting on information received from other sources, the FBI conducted a warrantless search on the farm and recovered the suitcase. The court, quoting with approval from *United States v. Colbert, supra,* sustained the search and seizure of the suitcase, saying that:

> We construe the leaving of the suitcase buried in the chicken coop in an open field as an abandonment of it by Brown, and hold that the officers were justified in opening it without first obtaining a warrant. [*Id.* at 954; footnote omitted.]

In *United States v. Edwards, supra,* the defendant, pursued by police officers in a wild automobile chase, failed to negotiate a turn, stopped the automobile, and ran away leaving the lights on and the motor running. The police conducted a warrantless search of the vehicle and seized contraband whiskey. The court held that the defendant had no standing to question the legality of the search and seizure as he had abandoned the car, thus forfeiting "any reasonable expectation to a continuation of his personal right against having his car searched . . . ." [*Id.,* 441 F.2d at 753.]

Generally, all of the cases involving the concept of abandonment find their support in the Supreme Court decision in *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), where the defendant, pursued across a field by revenue officers, threw away a jug of moonshine whiskey. Holding admissible in evidence the testimony of the officers as to the contents of the jug, the Court stated at 58, 44 S.Ct. at 446:

> It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. The defendant's own acts, and those of his associates, disclosed the jug . . . and there was no seizure in the sense of the law when the officers examined the contents . . . after it had been abandoned. . . .

From all of the foregoing, it appears that the question of the accused's intent with respect to the television set (upon which the majority opinion apparently places paramount reliance) is of little consequence. Certainly it can hardly be said that the accused in *United States v. Edwards, supra,* intended to forever relinquish his property rights in a valuable motor vehicle or that the accused in *United States v. Brown, supra,* did not intend to return and retrieve the loot that he had so carefully concealed under the chicken coop. The common factor in those cases, and the appropriate one for consideration in the case at bar, is that the accused relinquished, even though for a short while, his *possession and control* of the property. Under the circumstances it can properly be said that the property was "abandoned" and that the accused forfeited any Fourth Amendment right he may have had to be secure in such property.

An additional consideration in the determination of an accused's right to claim the protection of the Fourth Amendment is the question of the place where the alleged infringement took place. The Supreme Court has held that

> What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. There he is protected from unwarranted governmental intrusion. And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has the right to know it will be secure from an unreasonable search or an unreasonable seizure. . . . [Footnote omitted; *Hoffa v. United States,* 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966).]

In *People v. Carroll,* 12 Ill.App.3d 869, 299 N.E.2d 134 (1973), *cert. denied,* 417 U.S.

972, 94 S.Ct. 3180, 41 L.Ed.2d 1144 (1974), the police obtained a house key from a jacket discarded by the accused at the scene of a robbery. The key was thereafter tested in the lock of a door to the apartment where the accused resided. Because the door was accessible from a common hallway of the building it was held that "A police officer who is in the common hallway of a building is not in a constitutionally protected area." *Id.,* 299 N.E.2d at 139.

In *Commonwealth v. Battle,* 304 N.E.2d 202, 205 n.7 (Mass.App.1973), *aff'd on further appeal,* 313 N.E.2d 554 (Mass.App. 1974), the defendant was pursued by a police officer into the hallway of an apartment building and was seen to throw something to the floor, which was later determined to be four bags of heroin. In addition to holding that the defendant had "voluntarily given up all control over the bags and could have no expectation of privacy with respect thereto" (citing *inter alia, Hester v. United States, supra,* and *United States v. Edwards, supra*), the court said that the defendant had no right of privacy in the hallway.

However, it should be noted that the viability of the concept of a constitutionally protected area has been considerably weakened by the Supreme Court's decision in *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967), where it was said:

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. . . . [Citations omitted; *id.* at 351–52, 88 S.Ct. at 511.]

In his concurring opinion in that case, Mr. Justice Harlan elaborated on the concept expressed in the majority opinion saying:

As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for most purposes a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. . . . [*Id.* at 361, 88 S.Ct. at 516.]

Thus, the current view is that the protections of the Fourth Amendment are personal and are not tied to any property concepts. The courts have increasingly applied the test of whether the accused's "reasonable expectations of privacy" have been unreasonably disturbed by the activities of the police. In determining whether an accused has a reasonable expectation of privacy under a given set of circumstances, it must be remembered that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States, supra* at 351, 88 S.Ct. at 511.

In *United States v. Colbert, supra* (quoting in the majority opinion), the court held that by walking away from their briefcases and disclaiming any interest in them, the defendants had abandoned their property and "could entertain no reasonable expectation of privacy in them." In *United States v. Edwards, supra,* the court held that the defendant had abandoned his vehicle and could have "no reasonable expectation of privacy with respect to his automobile. . . ." [*Id.* at 751.]

**280**

The concept of no-reasonable-expectation-of-privacy has been particularly applied in cases involving the seizure of articles placed in public trash cans, the courts holding that the defendants had surrendered their privacy with regard to such articles. *United States v. Mustone*, 469 F.2d 970 (1st Cir. 1972); *United States v. Jackson*, 448 F.2d 963, 971 (9th Cir. 1971). It has also been applied where the defendant's suitcase, containing heroin, had been placed either by himself or by his girl friend in the home of the girl friend's stepfather. It appeared that the defendant was not a guest in the home, and that his girl friend was residing there only temporarily. The heroin was discovered when the stepfather became suspicious and notified the police. The court held that there was no violation of the defendant's Fourth Amendment rights since by leaving the suitcase at the residence he "could have no reasonable expectation of privacy." *State v. Edwards*, 5 Wash.App. 852, 490 P.2d 1337 (1971).

Determining that the defendant forfeited his right, under the Fourth Amendment, to complain of a search and seizure of personal property left by him when he vacated rented premises, the Ninth Circuit Court of Appeals stated:

The proper test for abandonment is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the articles alleged to be abandoned. . . . [*United States v. Wilson*, 472 F.2d 901, 902 (9th Cir.), *cert. denied*, 414 U.S. 868, 94 S.Ct. 176, 38 L.Ed.2d 116 (1973).] [Citations omitted.]

From all of the foregoing the conclusion seems compelled that the conduct of the appellee in placing and leaving the television set in a common hallway when he

departed the building, thus relinquishng his possession and control over it and exposing it to public scrutiny, constituted an abandonment of the property in contemplation of law. Because the television set when first seen by police was not in a constitutionally protected area, appellant could not have had at that time any reasonable expectation of privacy. Consequently, the order of the trial court, suppressing as evidence the television set, should not be permitted to stand.[2] Accordingly, I respectfully dissent.

---

2. The doctrine of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), simply has no application. What is involved here is a search and seizure of property and not a search of the person.