**Wayne WHITTEN, a/k/a Fred Wade, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13313.**

District of Columbia Court of Appeals.

Submitted Sept. 20, 1978.

Decided Dec. 19, 1978.

Mark D. Mestel, Washington, D. C., appointed by this court, was on the brief, for appellant.

Earl J. Silbert, U. S. Atty., Washington, D. C., with whom John A. Terry, Michael W. Farrell, Richard C. Bicki and William E. Bucknam, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, HARRIS and MACK, Associate Judges.

KERN, Associate Judge:

Appellant was convicted of petit larceny and sentenced by the trial court to 180 days imprisonment, concurrent with other sentences he was serving. He had waived jury trial and stipulated to the facts which had been developed at the hearing of his pretrial motion to suppress a red leather jacket which a police officer seized from him immediately after he left a store in Georgetown. The court denied that motion and then adjudged him guilty upon the basis of the stipulation.

The relevant evidence in the testimony of the officer at the suppression hearing was as follows. Officer Harrison, while on patrol in his police cruiser, received a radio run which directed him to a store on Wisconsin Avenue where earlier that day an employee had sighted a man (appellant) who had acted in a suspicious manner within that store. This employee had called the police who instructed her to call again if the man returned; and upon seeing him near her shop that afternoon, she again called the police. Her afternoon call in response to police instructions was the basis for the radio run to which Officer Harrison responded. Officer Harrison, after receiving from her a description of appellant and hearing her comment that he (appellant) was "probably next door stealing," started to enter the adjacent store but immediately encountered appellant on the sidewalk outside.

The officer requested appellant to identify himself. This appellant could not do, offering two contradictory stories as to where he had left his wallet.[1] Appellant

---

1. He first said the wallet was in his car and then said it had been stolen. (Record at 27.)

had a raincoat over his arm, despite the fact that it was raining, and responded "nothing" when Officer Harrison asked what he had under his raincoat. (The officer was unable to see anything under the coat.) The office then "gently" lifted the coat and discovered a red leather jacket underneath.[2] The owner of the store from which appellant had just exited identified this jacket as the store's property and the officer thereupon arrested appellant for petit larceny which was the basis of the charge against him in the trial court.

The theory upon which the trial court relied in denying the suppression motion[3] is reflected in two colloquies with defense counsel at the conclusion of the evidence and argument.

> [DEFENSE COUNSEL]: He [the officer] actually searched him [appellant].
>
> THE COURT: He didn't make a seizure; he just investigated. That's part of his investigation.
>
> \*    \*    \*    \*    \*    \*
>
> [DEFENSE COUNSEL]: Your Honor, we submit the stop was reasonable. The only question is the search.
>
> THE COURT: If it's reasonable, they can make a search. I don't have any problem with it in light of the law. ·

The government on appeal espouses the theory in support of affirmance that "the officer's 'gently' lifting appellant's raincoat was a permissible investigative stop under the Fourth Amendment." (Appellee's Brief at 5.) Put another way, the government argues: "[A]lthough the officer's action in then lifting the coat from appellant's arm was a search within the meaning of the Fourth Amendment . . . it constituted a minimal intrusion that was reasonable and justified in light of Officer Harrison's articulable suspicions that a crime might have been committed." (Appellee's Brief at 7.)

■ This court had occasion to address itself in another case to the very theory the government advances in the instant case. *United States v. Boswell,* D.C.App., 347 A.2d 270 (1975). There, Detective Anthony Johnson observed appellant and another in broad daylight walking rapidly down the street in possession of a large object entirely covered by a blanket. Having recently investigated several daytime burglaries and noting certain aspects of the pair's behavior that seemed unusual to his trained eye, the officer suspected that criminal activity was afoot. Taking the opportunity presented him, when they moved away momentarily from the blanketed object, he looked beneath the blanket, and discovered a color television set. The officer obtained their names and addresses and 24 hours later received a report of the theft of a television matching that which he had discovered under the blanket. Subsequently, he arrested appellant. The trial court suppressed the set prior to trial and we upheld this suppression against the government argument that the lifting of the blanket "was not unreasonable within the meaning of the Fourth Amendment and, therefore, prohibited." Specifically, we relied upon the Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and stated:

> Since the television was not abandoned and since a person carrying a covered object on the street has a reasonable expectation of privacy, if the court were to uphold Johnson's conduct it would by implication sanction on-the-street warrantless searches of a person's effects based on a police officer's suspicion or hunch. Such a justification for a search was flatly rejected in *Terry v. Ohio, supra* [392 U.S.] at 22, 88 S.Ct. 1868. Certainly street encounters are one of the recognized exceptions to the warrant requirements of the Fourth Amendment, but the Supreme Court has cautioned:

---

**2.** When the court asked Officer Harrison with reference to the raincoat, "Did he [appellant] commit any actions which led you to believe that he was hiding something?", the officer replied in the negative. (Record at 28.)

**3.** Once the motion to suppress was denied the parties stipulated to the facts and the court imposed sentence upon finding appellant guilty of petit larceny.

The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . . So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. [Footnote omitted; citation omitted.]

We see no necessity to expand the right of the police to safely investigate suspicious behavior to include the power to conduct a warrantless exploratory search for evidence based on suspicion alone. For as the Court stated of the Fourth Amendment in *Terry v. Ohio, supra* at 8–9, [88 S.Ct. 1868 at 1873]:

This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. [*United States v. Boswell, supra* at 276.]

■ We reiterate in the instant case that when an officer has stopped a citizen whom he has an articulable reason to suspect is presently engaged or has just engaged in criminal activity, the officer is authorized to lay hands on the citizen to discover what he may have concealed on his person *only* when the officer has a reasonable belief the citizen may be armed and dangerous; the justification for such frisk by the officer is solely in order to protect himself. The government does not urge on this appeal that Officer Harrison believed appellant might be armed and the record does not reflect that the officer's lifting of appellant's raincoat to uncover the leather jacket was justified as a protective frisk.[4]

We are mindful of the Supreme Court's admonition that "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). We note also this court's admonition that "courts should be 'earthy' in assessing these street encounters." *Cooper v. United States,* D.C.App., 368 A.2d 554, 557 (1977). At the same time, we are bound to heed the Supreme Court's mandate, quoted with approval by this court in *Boswell, supra* at 275, that:

Thus the most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." . . . "[T]he burden is on those seeking the exemption to show the need for it." [Footnotes omitted.]

Given the particular facts and circumstances here, we are constrained to rule that the officer's search of and seizure from appellant does not fall within any exceptions to the Fourth Amendment's protection and accordingly the trial court should have suppressed the leather jacket.

*Reversed and remanded for further proceedings.*

---

4. *Although the shop employee who telephoned the police and thereby brought this officer to the scene had certain information concerning appellant's activities earlier in the day, she did not give this information to the officer before* he confronted appellant. (Record at 16, 33.) The officer was quite explicit in his testimony that he "didn't know anything about the first call" to the police made by the store employee on the morning of that day. (Record at 34.)