**Carlton J. SMITH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6146.**

District of Columbia Court of Appeals.

Argued May 10, 1972.

Decided June 30, 1972.

Joseph Paull, Washington, D. C., appointed by this court, for appellant.

John J. Mulrooney, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Charles F. Flynn, Asst. U. S. Attys., were on brief, for appellee.

Before PAIR, REILLY, and YEAGLEY, Associate Judges.

REILLY, Associate Judge.

This is an appeal from a conviction on a charge of carrying a dangerous weapon.[1] Appellant contends that (1) the trial court below erred in denying his motion to suppress the weapon as evidence and (2) in any event, there was insufficient proof of possession.

The only witness at the hearing on the motion to suppress was John A. Prosek, an officer of the Metropolitan Police. He testified that on the evening of March 2, 1971, he and some other officers were assigned to a plainclothes detail which had entered a house in the northeast quarter of the city under authority of a search warrant.[2] About nine o'clock the officers who were still inside the house heard a knock at the door and upon opening it, found appellant and another man standing there. Prosek stepped forward and identified himself as a police officer. Thereupon appellant, without apparent reason, turned and fled. Prosek gave chase and observed appellant throw away a "shiny object" as he ran across the yard. The officer recovered the object—a .32 calibre revolver—and another officer apprehended appellant.

The trial court found that the revolver "was abandoned, not merely set aside in a custodial environment which indicated that

1. D.C.Code 1967, § 22–3204.
    No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as

hereinafter provided, or any deadly or dangerous weapon capable of being so concealed. . . .

2. The warrant was more fully described by Prosek at trial as a "United States magistrate's search warrant for narcotics."

the defendant intended to come back and get it at a later time . . . ." The court concluded that appellant had no standing to make the motion to suppress and so denied it.

Appellant argues that the revolver was not abandoned, that had the police not found the revolver he would have been back searching for it "on his hands and knees." Appellant also contends that even accepting the testimony of the officer as true, such testimony discloses that he was coerced into discarding his revolver by the prospect of an illegal arrest.

■ As appellant had thrown away the revolver by the time the pursuing policeman had caught up to him, it is unnecessary for us to pass on the latter contention, for it is purely hypothetical. Had appellant kept the weapon on his person and not attempted to discard it until he was actually in custody, we might then have had occasion to consider whether appellant's sudden flight from premises undergoing a lawful search for narcotics provided probable cause for arrest. In Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789 (1956), it was held that where a prisoner, arrested without a warrant and without probable cause, tossed a package of narcotic capsules on the floor of a precinct station, such package was improperly received in evidence.[3] Inasmuch as the contraband article here was a handgun, however, the circumstances were different. Preliminary to an interrogation of a suspect not under arrest, a police officer may, if he thinks such suspect is armed and dangerous, frisk for concealed weapons, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ On the abandonment issue, the question of whether or not appellant intended eventually to return and retrieve the revolver is irrelevant. By removing this article from his coat pocket and tossing it into the street, he had obviously given up its possession by leaving it in a public place where it might have been discovered and picked up by any passerby. It is true that such temporary surrender of possession would not necessarily be viewed as tantamount to loss of title if the owner brought an action of replevin or trover against the finder. Mere retention of title to an abandoned object, however, is not the basis for invoking the protection of the fourth amendment. It is fundamental that one who abandons property prior to search cannot object to illegal seizure of such property, Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559, cert. denied, 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968), and whether complete abandonment exists in the strict property-right sense is not material, United States v. Edwards, 441 F.2d 749 (5th Cir. 1971).[4] Accordingly, the motion to suppress was properly denied.

After a careful review of the record of the trial, we are also persuaded that there was sufficient evidence to prove beyond a reasonable doubt that appellant possessed the revolver. Officer Prosek testified:

. . . I saw him throw what appeared to be a shiny object with his right hand. . . . And I followed this object, and

---

3. *Cf.* Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

4. It is clear in this jurisdiction that where incriminating evidence is discarded in a public area in anticipation of a police investigation, the fourth amendment does not set limits on its recovery by the police, even where what is exposed to public view is not itself evidence of a crime. Brown v. United States, D.C.App., 261 A.2d 834 (1970) (shopping bag containing stolen articles); Lee v. United States, 95 U.S.App.D.C. 156, 221 F.2d 29 (1954) (napkin containing stolen jewelry). *See* United States v. Hayes, D.C. App., 271 A.2d 701 (1970). *See also* Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); United States v. Copeland, 263 F.Supp. 976 (S.D.N.Y.1967).

**152**

I heard a loud clank as if metal had struck metal.

\*   \*   \*   \*   \*   \*

It was dark except for the street lamps. I couldn't really say what it was, but it shined, and I followed the path of it, and I heard this loud clank, and that's when I yelled that he threw something, and then I proceeded directly . . . I walked directly to the car where I heard the sound come from, and that's where I found this revolver.

The witness also told the court that he had examined the area around the automobile where he picked up the revolver and found no other objects which could have made a clanking noise if struck against the car. We find this evidence sufficient to take the issue of possession to the trial judge, who in this case was the trier of fact.

Affirmed.