Denise V. SPRIGGS, Appellant,

v.

UNITED STATES, Appellee.

No. 90–CF–1486.

District of Columbia Court of Appeals.

Argued Oct. 22, 1992.
Decided Dec. 30, 1992.

Diane Kiester Dildine, Washington, DC, appointed by this court, for appellant.

Stephen N. Berk, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Leslie A. Blackmon, Asst. U.S. Attys., Washington, DC, were on the brief for appellee.

Before ROGERS, Chief Judge, and SCHWELB and SULLIVAN, Associate Judges.

SULLIVAN, Associate Judge:

Appellant was convicted by a jury of possession with intent to distribute two controlled substances, cocaine and heroin, in violation of D.C.Code § 33–541(a)(1) (1988). She appeals her conviction on three grounds. First, appellant argues that the trial court erred when it denied her motion to suppress evidence, and thereby violated her Fourth and Fifth Amendment rights, by ruling that she had "abandoned" a brown metallic key case when she placed the case in a public area and walked away from it as the police approached her. Second, appellant contends that the trial court erred by denying her motion for judgment of acquittal because the government's evidence was insufficient to prove that she intended to distribute the cocaine and heroin in her possession. Third, appellant argues that the trial court erred by admitting expert testimony that possession of eight packets of heroin and cocaine was consistent with possession with intent to distribute, when possession of identical quantities was also consistent with possession for personal use. We affirm.

---

1. The defense did not present any evidence.

## I.

The government's evidence[1] shows the following: On November 22, 1988, at approximately 10:00 a.m., in the area of the 1900 block of 9th Street, Northwest, uniformed members of the Metropolitan Police Department, riding police scooters, were assigned to carry out an overtime detail called "Operation Clean Sweep." Their goal was to combat the sale of illicit drugs at "open air drug markets." As the officers approached on their scooters, the crowd began to disperse. When Officer Arthur Perry had come within eight to ten feet of the crowd, he observed appellant stooping down and placing a small object on a small curb on the ground next to a fence post. Appellant stood up and immediately started walking away in the direction of a nearby driveway. Officer Perry instructed Officer Bobby A. White, who was adjacent to him on another scooter, to stop appellant. Officer White stopped appellant approximately four to seven feet from the fence post next to where she had placed the object on the ground.

While Officer White detained appellant, Officer Perry retrieved the object, a brown metallic (magnetic) key case. Officer Perry opened the key case and discovered that it contained a total of thirteen separate small packets of a white powdery substance, eight of which later tested positive as thirty-six percent pure heroin and the other five of which later tested positive as forty-one percent pure cocaine.

Detective Albert Young was qualified without objection as the government's expert on the use and trafficking of controlled substances in the District of Columbia. He also testified without objection that the eight bags of heroin, weighing 850 milligrams, and the five bags of cocaine, weighing 1330 milligrams, which were recovered by police from the key case placed on the ground by appellant, represented "usable amounts" of drugs in that they contained "an amount that can be ingested or put into the body in a typical fashion in which it is used." He testified further that

in November 1988, each packet of heroin would have sold for about $35.00 and that each packet of cocaine would have sold for between $30.00 and $40.00. In Detective Young's opinion, possession of the eight packets of heroin and the five packets of cocaine was more consistent with an intent to distribute than with personal use. This opinion was based in part on the quantity, value, and packaging in smaller bags, and also on the possession of *both* heroin and cocaine.[2]

## II.

■■■ Appellant attempts to distinguish this case from the typical abandonment case by contending that she "did [no] more than give up temporary custody of the key case." In a typical abandonment case, according to appellant, the subject drops an object in a way that clearly evidences his or her intention[3] to distance himself or herself from that object. Therefore, appellant argues that the drugs seized from the key case by police should have been suppressed as a product of an unlawful search and seizure.

The trial court found appellant's argument on the issue of abandonment to be without merit. Relying on this court's decision in *Smith v. United States*, 292 A.2d 150 (D.C.1972), the trial court determined that appellant had abandoned the key case and that the abandonment was dispositive as to the legality of the search and seizure of it by police. The trial court noted that it

was persuaded by the following language from *Smith:*

> "It is clear in this jurisdiction that where incriminating evidence is discarded in a public area in anticipation of a police investigation, the [F]ourth [A]mendment does not set limits on its recovery by the police, even where what is exposed to public view is not itself evidence of a crime."

*Smith, supra*, 292 A.2d at 151 n. 4.

Applying *Smith* to the instant case, the court stated that "appellant discarded the key case on a public sidewalk, exposing it to public view, any passer-by could have picked it up in that period of time. And under *Smith* ... I think that resolves the issue."

"Because the ultimate determination [of abandonment in the Fourth Amendment sense] hinges on the outcome of a factual inquiry into intent, a finding of abandonment is reviewed under a clearly erroneous standard." *See United States v. Thomas*, 275 U.S.App.D.C. 21, 24, 864 F.2d 843, 846 (1989). We hold that the trial court's finding of abandonment is not clearly erroneous, and we will, therefore, not disturb it. D.C.Code § 17–305(a) (1989).

## III.

■■■ This court reviews a trial court's denial of a motion for judgment of acquittal by viewing the evidence in the "light

---

2. On cross-examination, Detective Young acknowledged that an individual with a substantial heroin and cocaine habit could have consumed the amount of heroin and cocaine recovered from the key case, although he did not state how much time it would require a person to consume such a quantity. He also testified that an individual who purchased the amount of drugs at issue in this case would be likely to buy them in larger portions in order to obtain a more favorable price; he testified further that it was unlikely that an individual would buy several separate packets at a time for fear that they might turn out to be "burn bags" (the street term for bags containing no drugs or bogus drugs).

3. If an individual abandons property, the person no longer has a legitimate expectation of privacy in it and thus lacks standing to challenge its

search or seizure. In determining whether property has been abandoned, the court's primary concern is the individual's intent. *See United States v. Boswell*, 347 A.2d 270, 274 (D.C. 1975) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973)).

> [I]ntent may be inferred from words spoken, acts done, and other objective facts.... All relevant circumstances existing at the time of the alleged abandonment should be considered.... The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.... [Citations omitted.]

*Id.* at 274 (footnote omitted).

most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Hall v. United States*, 454 A.2d 314, 317 (D.C. 1982). *See also Irick v. United States*, 565 A.2d 26, 30 (D.C.1989). The court does not make a distinction between direct and circumstantial evidence. *Chambers v. United States*, 564 A.2d 26, 30–31 (D.C.1989). Only if the court concludes that no reasonable juror could have been convinced beyond a reasonable doubt of appellant's guilt should the denial of the motion be reversed. *Id.* at 31.

Our review of the record reveals the following facts which together clearly constitute evidence sufficient for a reasonable juror to find appellant guilty beyond a reasonable doubt of possession with intent to distribute a controlled substance. As the government's expert testified, the quantity, packaging, and value of the drugs possessed by appellant (thirteen separate packets—eight packets of heroin and five packets of cocaine—worth approximately $470.00) was more consistent with an intent to distribute than with personal use. *See Shorter v. United States*, 506 A.2d 1133, 1135 (D.C.1986) (possession of a quantity of drugs that exceeds reasonable supply is significant evidence of an intent to distribute); *Chambers v. United States, supra,* 564 A.2d at 31 (cocaine possessed in three separate packages rather than one large mass was evidence of intent to distribute); *United States v. Raper,* 219 U.S.App.D.C. 243, 247, 676 F.2d 841, 844 (1982) (possession of heroin valued at between $520.00 and $780.00 was consistent with an inference that drugs were possessed with an intent to distribute).

The circumstances surrounding appellant's arrest—the crowd's dispersal from the "open air drug market" upon arrival of the police on scooters, and her abandonment of the drugs before leaving, also support an inference that she possessed the seized drugs with an intent to distribute. *See Hinnant v. United States*, 520 A.2d 292, 294 (D.C.1987) (a factor in establishing intent to distribute is possession in an area known for a high incidence of drug traf-

ficking); *United States v. Dunn*, 269 U.S.App.D.C. 373, 376, 846 F.2d 761, 764 (1988) (intent to distribute can be inferred from the fact that just prior to arrest defendant "cast off cocaine packaged in nine vials").

Appellant's contention that the foregoing individual facts and circumstances are "neutral" is also unpersuasive. In our view, the jury had sufficient evidence before it to establish beyond a reasonable doubt that appellant possessed cocaine with an intent to distribute. Therefore, we hold that the trial court did not err by denying her motion for judgment of acquittal.

## IV.

Since appellant failed to object at trial, this court's review of whether the trial court erred by admitting expert testimony that possession of eight packets of heroin and five packets of cocaine was "more consistent with possession with intent to distribute than with personal use" must be in accordance with the extremely limited plain error standard. "[R]eversal under the plain error doctrine is justified only in exceptional circumstances where 'a miscarriage of justice would otherwise result.'" *(Thomas E.) Harris v. United States*, 602 A.2d 154, 159 (D.C.1992) (en banc) (citing *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

We have repeatedly recognized that issues involving the "modus operandi" of drug traffickers on the streets are not matters within "the ken of the average lay person," and thus expert testimony regarding such issues may be admitted if relevant. *Hinnant v. United States, supra,* 520 A.2d at 293. *See also Griggs v. United States*, 611 A.2d 526, 527–528 (D.C.1992); *Shorter v. United States, supra,* 506 A.2d at 1135; *(Calvin) Harris v. United States*, 489 A.2d 464 (D.C.1985). Testimony by Detective Albert Young, the government's expert, that possession of thirteen individual packets of cocaine and heroin "is more consistent with intent to distribute than with personal use," properly drew a rea-

sonable conclusion from facts in evidence regarding drug trafficking. Specifically, the expert's opinion testimony relied on the quantity, packaging, variety, and value of the seized drugs. Since the trial court could properly find that that conclusion was based on matters beyond the ken of the jury, we hold that it was not plain error for the trial court to allow the expert opinion testimony.

Appellant argues further that the government expert's testimony addressed the ultimate issue at trial, was "fatally flawed" and "highly prejudicial," and, for those reasons, should not have been admitted into evidence by the court. The scope of the expert's testimony was limited to explaining the significance of the quantity, packaging, variety, and value of the seized drugs. Contrary to appellant's contention, the expert's testimony did not address the ultimate issue before the jury since the jury still had to determine appellant's intent. Thus, appellant's argument is unpersuasive. Moreover, assuming that what the expert said went to the "ultimate issue," that would not make it inadmissible. *See, e.g., United States v. Boney,* 977 F.2d 624, 629–30 (D.C.Cir.1992). *See also* FED. R.EVID. 704,[4] *cited with approval in Carter v. United States,* 614 A.2d 913, 919 n. 12 (D.C.1992).

Accordingly, the judgment on appeal herein is

*Affirmed.*

---

4. FED.R.EVID. 704 provides in relevant part that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."