# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4324

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Larry Charles Taylor, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 16, 2006
Filed: August 31, 2006

_____

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

A jury convicted Larry Taylor of possession with intent to distribute cocaine, possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1) and 21 U.S.C. § 841. He appeals, arguing the district court[1] erred by denying his motion to suppress, excluding an exculpatory police report, and admitting expert testimony that firearms are tools of the drug trade. We affirm.

_____

[1]The HONORABLE JAMES M. ROSENBAUM, Chief Judge of the United States District Court for the District of Minnesota.

# I. The Suppression Issue

In August 2004, a confidential informant told Minneapolis narcotics investigator Kurt Radke that an individual named "D" would transport a large load of cocaine from Chicago to Minneapolis the next day. The informant had previously provided Radke with D's cell phone number and had described D and the several automobiles he drove in transporting cocaine from Chicago to the Twin Cities. To verify this latest information, Radke asked the informant to call the cell phone number and listened to the conversation, which confirmed the delivery date. Radke then obtained a state court pen register order, and police began monitoring the cell phone's location and calls.

The cell phone began moving from Chicago toward Minneapolis at 1 p.m. the next day. When the phone stopped moving that evening in a "high density, high crime" Minneapolis neighborhood, police began searching the area for D and any of the cars described by the informant. Around 9:15 p.m., Officer Michael Hentges saw a red Pontiac with Illinois license plates parked in an alley with its lights on. Hentges observed an individual matching D's description exit the Pontiac, look in its trunk, proceed to a third floor apartment, return to the Pontiac ten minutes later, and drive off. Several unmarked police cars followed. When the monitor indicated the cell phone resumed moving with the Pontiac and received an incoming call, Radke instructed a marked squad car to stop the Pontiac.

A squad car going the opposite direction passed the Pontiac and "flipped around." The Pontiac turned at the next intersection. Deputy Sheriff Eric Flek in an unmarked car followed and saw the Pontiac stop about three-fourths of a block ahead. With the Pontiac's engine running, Flek saw the driver exit the car, grab a black bag from the trunk with his right hand, and run into an alley with a small black object in his left hand. The driver disappeared behind a garage, reemerged seconds later without the black bag, and continued down the alley, making an "under-arm-type throw" with his left hand before disappearing between two garages. Police searched

the alley and adjoining yards.  They saw boots sticking-out from beneath a woodpile beside a garage in the alley, forcibly pulled driver Larry Taylor from the woodpile when he would not come out, and handcuffed him.  Other officers, assisted by a drug dog, found Taylor's black bag containing 986 grams of cocaine in a back yard and a loaded Glock 9 mm handgun in another back yard near the alley. Another officer secured the Pontiac, finding the cell phone lying on the street near the open driver's door and a digital scale with cocaine residue on the front passenger's seat.

On appeal, Taylor argues that the district court erred in denying his motion to suppress, presenting a single Fourth Amendment issue.  He argues that the police initiated an unlawful investigative stop of the Pontiac without reasonable suspicion and thereby "impermissibly created their own exigent circumstances and probable cause."  Therefore, all physical evidence obtained after this unlawful investigative seizure must be suppressed as "fruit of the poisonous tree."

This contention has a simple and well-established answer -- "police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment."  County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998), citing California v. Hodari D., 499 U.S. 621, 626 (1991).  Taylor was not seized when he stopped the Pontiac and fled on foot.  The marked squad car had been ordered to make an investigative stop and presumably turned around to do so.  But Taylor driving the Pontiac turned the corner and eluded the stop.  Deputy Flek was still well behind the Pontiac when Taylor stopped the car and ran into the alley.  Thus, he had not been seized when he dropped the cell phone in the street and threw the black bag and the gun into different back yards.  This evidence when found by the police had been abandoned.  See Hodari D., 499 U.S. at 629; United States v. Willis, 967 F.2d 1220, 1223 (8th Cir. 1992).

-3-

## II. The Police Report

At trial, Taylor sought to introduce a 2002 suburban police report documenting a citizen's report that a Glock 9 mm handgun with the same serial number as the gun found in the back yard had been lost or stolen. Taylor offered the report to provide an alternative explanation for how the gun came to be in the back yard, citing Rule 803(8)(C) of the Federal Rules of Evidence. Rule 803(8)(C) contains a hearsay exception for trustworthy "factual findings" that resulted from authorized investigations and are offered against the government in criminal cases. The district court excluded the report because it contained unreliable double hearsay. Taylor argues the court abused its discretion. We disagree.

The police report contained double hearsay, the report itself, and what the citizen told police. Therefore, "the report is inadmissible unless each level of hearsay falls within an exception to the hearsay rule." United States v. Ortiz, 125 F.3d 630, 632 (8th Cir. 1997), cert. denied, 522 U.S. 1132 (1998); see Fed. R. Evid. 805. The report contained only a recitation of the citizen's statements to the police. Those statements fell under no exception to the hearsay rule. See Miller v. Field, 35 F.3d 1088, 1092 (6th Cir. 1994). Moreover, the report was inadmissible because it did not contain what Rule 803(8)(C) makes admissible -- "factual findings resulting from an investigation." See Ortiz, 125 F.3d at 632; Fed. R. Evid. 803, 1972 advisory committee's note ("Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.") The district court did not abuse its discretion in excluding this report.

## III. The "Tools" Testimony

Sergeant David Korus, a veteran narcotics investigator, testified over Taylor's objection that individuals possessing "half a pound to a pound or more" of cocaine usually are higher-level dealers and often carry loaded semiautomatic handguns, like the Glock 9 mm, for protection. On appeal, Taylor argues that this was speculative

testimony intended to link him to a gun no that one saw him possess, and that the district court abused its discretion in not excluding this testimony because the jury was likely to give it undue prominence. We have repeatedly upheld the admission of this type of expert testimony in drug and firearm cases because it assists the jury in understanding the business of drug trafficking, including the prevalent use of firearms. See United States v. Robertson, 387 F.3d 702, 704 (8th Cir. 2004); United States v. Newton, 31 F.3d 611, 612-13 (8th Cir. 1994); United States v. Boykin, 986 F.2d 270, 275 (8th Cir.), cert. denied, 510 U.S. 888 (1993). There was no abuse of discretion.

The judgment of the district court is affirmed.

_____