*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CO-330

UNITED STATES, APPELLANT,

v.

MONTERO KYLE, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-5408-18)

(Hon. Judith Smith, Trial Judge)

(Argued December 9, 2021                    Decided February 10, 2022)

*Daniel J. Lenerz*, Assistant United States Attorney, with whom *Michael R. Sherwin* and *Channing D. Phillips*, Acting United States Attorneys at the time the briefs were filed, and *Elizabeth Trosman*, *John P. Mannarino*, and *Dennis Clark*, Assistant United States Attorneys, were on the briefs, for appellant.

*Shilpa S. Satoskar*, Public Defender Service, with whom *Samia Fam* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and FISHER, *Senior Judge*.

MCLEESE, *Associate Judge*: The United States appeals from the trial court's order suppressing evidence. We reverse.

**I.**

The following evidence was introduced at a hearing on appellant Montero Kyle's motion to suppress evidence. At around 11 p.m. one night, uniformed Metropolitan Police Department officers saw a group of people in the street and on the sidewalk. Loud music was playing, and people in the group appeared to be drinking. Officers got out of the car, and one of them noticed Mr. Kyle, who was walking away from the group. Mr. Kyle was holding a bottle and had a backpack in his hand. One of the officers said "hey boss, come here," and Mr. Kyle then ran. The officer chased Mr. Kyle into an alley, where Mr. Kyle fell. As Mr. Kyle got up, he threw the backpack over a ten-foot-tall, solid fence separating the alley from a backyard. Mr. Kyle ran again, leaving the alley, running onto another street, and entering the backyard of a house on that street, where the officer apprehended him. Another officer retrieved the backpack, which contained a gun, Mr. Kyle's expired D.C. identification, his current Virginia driver's license, his vehicle registration and title, Virginia and D.C. license plates, and a set of keys, among other items.

Mr. Kyle moved to suppress the evidence obtained from the backpack, arguing that the seizure and search of the backpack were unlawful under the Fourth

Amendment. The United States argued in response that the seizure and search of the backpack did not violate Mr. Kyle's Fourth Amendment rights, because Mr. Kyle had abandoned the backpack. The trial court granted the motion to suppress, concluding that Mr. Kyle had not abandoned the backpack. The trial court gave several reasons for its conclusion: (1) the backpack contained personal items that would have been expensive, difficult, or impossible to replace; (2) the closed backpack was not an obviously incriminating item such as an exposed gun or drugs; (3) Mr. Kyle threw the backpack onto private property rather than in a public place; and (4) after Mr. Kyle threw the backpack over a high fence, the backpack was not immediately or readily accessible to the police. The trial court acknowledged the United States's argument that Mr. Kyle had thrown the backpack into the yard of a stranger, but reasoned that the officers would not have known that when they retrieved the backpack.

The trial court also ruled in the alternative that, even if Mr. Kyle had abandoned the backpack, the evidence recovered from the backpack should be suppressed because the police lacked both a warrant and adequate grounds to seize and search the backpack.

## II.

When reviewing a trial court's ruling on a motion to suppress, we "view the evidence in the light most favorable to the prevailing party." *Bennett v. United States*, 26 A.3d 745, 751 (D.C. 2011) (internal quotation marks omitted). We draw all reasonable inferences in favor of upholding the trial court's ruling. *Milline v. United States*, 856 A.2d 616, 618 (D.C. 2004).

The seizure and search of the backpack could violate Mr. Kyle's rights under the Fourth Amendment only if Mr. Kyle "manifested a subjective expectation of privacy in [the backpack] that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988). In other words, Mr. Kyle can prevail only if both (1) he retained a subjective expectation of privacy in the backpack; and (2) that expectation of privacy was objectively reasonable.

Mr. Kyle emphasizes our statement that "the ultimate determination of abandonment in the Fourth Amendment sense hinges on the outcome of a factual inquiry into intent." *Spriggs v. United States*, 618 A.2d 701, 703 (D.C. 1992) (brackets and internal quotation marks omitted); *see also United States v. Boswell*,

347 A.2d 270, 274 (D.C. 1975) ("Abandonment is primarily a question of intent . . . ."). It is true that the subjective intent of the defendant is an important part of the relevant inquiry. Our cases, including *Spriggs* and *Boswell*, make clear, however, that the defendant's intent is only half of the inquiry. For a defendant to prevail on a motion to suppress, the defendant's subjective expectation of privacy must also be objectively reasonable. *E.g.*, *Spriggs*, 618 A.2d at 703 n.3 (question is whether defendant voluntarily "relinquished his interest in the property in question so that he could no longer retain a *reasonable* expectation of privacy with regard to it at the time of the search") (emphasis added and internal quotation marks omitted); *Boswell*, 347 A.2d at 274 (same); *see also, e.g.*, *Greenwood*, 486 U.S. at 39 (seizure and search is basis for relief under Fourth Amendment only if defendant "manifested a subjective expectation of privacy . . . *that society accepts as objectively reasonable*") (emphasis added).

In the present case, we assume without deciding that Mr. Kyle retained a subjective expectation of privacy in the backpack. We hold that throwing the backpack over a fence into someone else's backyard while fleeing from the police precluded Mr. Kyle from retaining an objectively reasonable expectation of privacy in the backpack. We note that Mr. Kyle does not dispute that his action in throwing the backpack over the fence was voluntary for purposes of this case.

The issue presented in cases such as this is often discussed using the term "abandonment." *E.g.*, *Dozier v. United States*, 220 A.3d 933, 947 n.20 (D.C. 2019). That term also refers to a property-law concept, however, and its use in the Fourth Amendment context has the potential to create confusion. "The issue is not abandonment in the strict property-right sense . . . ." *Boswell*, 347 A.2d at 274. "It is possible for a person to retain a property interest in an item . . . while at the same time relinquishing any reasonable expectation of privacy for purposes of obtaining suppression." *Holt v. United States*, 675 A.2d 474, 479 n.3 (D.C. 1996); *see also, e.g.*, *Oliver v. United States*, 466 U.S. 170, 183 (1984) (holding that there is no reasonable expectation of privacy in open fields; "The existence of a property right is but one element in determining whether expectations of privacy are legitimate. The premise that property interests control the right of the Government to search and seize has been discredited.") (internal quotation marks omitted); *United States v. Salvucci*, 448 U.S. 83, 91 (1980) ("This Court has repeatedly repudiated the notion that arcane distinctions developed in property and tort law ought to control our Fourth Amendment inquiry.") (internal quotation marks omitted). We therefore focus our inquiry on whether Mr. Kyle retained an objectively reasonable expectation of privacy in the backpack at the time the police seized and searched the backpack.

Our cases are not entirely clear as to our standard of review. *Compare, e.g.*, *Spriggs*, 618 A.2d at 703 ("Because the ultimate determination of abandonment in the Fourth Amendment sense hinges on the outcome of a factual inquiry into intent, a finding of abandonment is reviewed under a clearly erroneous standard.") (brackets and internal quotation marks omitted), *with, e.g.*, *Brown v. United States*, 97 A.3d 92, 95-97 (D.C. 2014) (in context of abandonment claim, court states that whether defendant has reasonable expectation of privacy is issue of law that court reviews de novo). Because the standard of review does not affect the outcome of this appeal, we assume without deciding that we review the trial court's ruling for clear error.

On a related topic, Mr. Kyle argues that abandonment must be shown by clear, unequivocal, and decisive evidence. *Boswell*, 347 A.2d at 275. The United States has not disputed that argument. We therefore also assume without deciding that the United States bore a heightened burden of proof in this case. *But see, e.g.*, *Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.") (internal quotation marks omitted); *State v. Rynhart*, 125 P.3d 938, 943 (Utah 2005) (applying preponderance-of-evidence standard to issue of Fourth Amendment abandonment, explaining that "the distinction between the concept of abandonment in property law and in the context

of the Fourth Amendment supports application of the burden of proof generally applicable to motions to suppress").

## III.

We hold that Mr. Kyle clearly lacked an objectively reasonable expectation of privacy in his backpack at the time the backpack was seized and searched. While fleeing from the police, and in the sight of the pursuing officer, Mr. Kyle threw the backpack over a fence into a backyard that was not his own. There was no evidence that he had any other connection to the backyard, which happened to be next to the spot in the alley where he fell down while fleeing. After he threw the backpack, Mr. Kyle got up and ran some distance before ultimately being apprehended by police. We conclude that those circumstances are clearly, unequivocally, and decisively inconsistent with an objectively reasonable expectation of privacy in the backpack.

When an item is voluntarily "discarded in a public area in anticipation of a police investigation, the fourth amendment does not set limits on [the item's] recovery by the police . . . ." *Boswell*, 347 A.2d at 274, 275 n.10 (quoting *Smith v. United States*, 292 A.2d 150, 151 n.4 (D.C. 1972)). In *Spriggs*, for example, officers

approached Ms. Spriggs, who placed an opaque key case filled with valuable drugs on the curb of a public sidewalk and walked four to seven feet away from the key case. 618 A.2d at 702-03. This court affirmed the trial court's conclusion that Ms. Spriggs had abandoned the key case for purposes of the Fourth Amendment. *Id.* at 703.

In several respects, the circumstances of this case are more inconsistent with an objectively reasonable expectation of privacy than the circumstances of *Spriggs* were. Ms. Spriggs placed her item down, whereas Mr. Kyle threw his; Ms. Spriggs walked away from her item, whereas Mr. Kyle ran away from his; and Ms. Spriggs traveled only a few feet from her item, whereas Mr. Kyle traveled quite a bit farther from his. Mr. Kyle, however, points to another difference between this case and *Spriggs*: Ms. Spriggs left her item in plain view in a public place, whereas Mr. Kyle left his on private property behind a fence that hid the item from general public view. We agree with Mr. Kyle that this difference is relevant. We disagree, however, that it suffices to support the trial court's ruling in the circumstances of this case.

It appears to be undisputed that Mr. Kyle threw his backpack into another person's backyard. The parties do dispute whether that person was proven to be a

stranger to Mr. Kyle. The United States argues that the trial court found as a matter of fact that Mr. Kyle threw the backpack into the backyard of a stranger. Mr. Kyle argues that the trial court made no such finding and that the record would not have supported such a finding. We need not resolve that dispute. For current purposes, it suffices that Mr. Kyle threw his backpack into another person's backyard and that there was no evidence that Mr. Kyle had any connection to the homeowner. Mr. Kyle should reasonably have expected that the homeowner might notice the backpack and open it to determine whose it was or whether it contained dangerous or illegal items. Mr. Kyle also should reasonably have expected that the homeowner might ask the police to come and investigate an unexplained backpack in the homeowner's backyard. Moreover, Mr. Kyle placed the backpack in a location that might well have been legally inaccessible to him, because -- unless he obtained consent from the homeowner -- he would have had no legal right to enter onto another's property to retrieve the backpack. *See, e.g.*, *State v. Burt*, 918 N.W.2d 501 (Table), 2018 WL 1629233, at *3 (Iowa Ct. App. 2018) ("[R]etrieving personal property intentionally left on another person's property is not a legitimate purpose or defense to trespassing."); Restatement (Second) of Torts § 198(1) (Am. L. Inst. 1965) (although party may in some circumstances enter onto property of another to recover party's chattel, that is not true if chattel is on property with party's consent); 75 Am. Jur. 2d *Trespass* § 84 (Nov. 2021 update) (same).

We do not mean to suggest that these circumstances by themselves are fatal to Mr. Kyle's claim. Rather, our holding is that Mr. Kyle clearly lacked an objectively reasonable expectation of privacy in the backpack given these circumstances and the other circumstances of the case, including that Mr. Kyle threw the backpack while fleeing from the police and while in view of the police, and that Mr. Kyle then ran off, substantially distancing himself from the backpack.

Numerous courts have concluded that defendants lacked an objectively reasonable expectation of privacy in circumstances comparable to those of this case. *See, e.g.*, *United States v. Juszczyk*, 844 F.3d 1213, 1213-15 & n.3 (10th Cir. 2017) (Mr. Juszczyk lacked objectively reasonable expectation of privacy in backpack containing identifying documents and contraband, where Mr. Juszczyk, who was in yard of acquaintance's home working on motorcycle, threw backpack onto roof when police arrived at home; in absence of specific consent from homeowner, Mr. Juszczyk would have committed trespass if he had tried to retrieve backpack from roof); *United States v. Nowak*, 825 F.3d 946, 947-49 (8th Cir. 2016) (per curiam) (Mr. Nowak lacked objectively reasonable expectation of privacy in backpack containing handgun, where Mr. Nowak asked friend for ride, police officers stopped car for traffic violation, and Mr. Nowak fled from car despite being told to remain, leaving backpack behind; "In this case, there is simply no evidence that [Mr.] Nowak

gave any indication—verbal or otherwise—that he intended for [the driver] (or anyone else) to take care or possession of the backpack in his absence such that his personal belongings would remain private. Nor do the circumstances lend themselves to such a conclusion."); *Commonwealth v. Carnes*, 967 N.E.2d 148, 150-53 (Mass. App. Ct. 2012) (Mr. Carnes lacked objectively reasonable expectation of privacy in backpack containing weapon, where Mr. Carnes fled scene of murder, put backpack in bushes between shed and fence in best friend's backyard, and then left area; Mr. Carnes concealed backpack in backyard he neither owned nor controlled, throwing backpack into bushes was not "normal precaution[] to maintain his privacy," and there was "no evidence that [Mr. Carnes] left the item to the care or responsibility of another"); *State v. Kolia*, 169 P.3d 981, 983-84, 985-90 (Haw. Ct. App. 2007) (Mr. Kolia lacked objectively reasonable expectation of privacy in fanny pack containing drugs, where Mr. Kolia threw fanny pack on roof of laundry-room building while fleeing from police and there was no evidence of Mr. Kolia's connection to location; "[T]he laundry room roof was on private property at a place which was inaccessible except to those who had both the means (such as a ladder) and the right to gain access to the roof. Thus, [Mr.] Kolia himself would have been unable to retrieve the fanny pack without both the permission of the property owners and the proper means to retrieve it.") (citing numerous cases); *United States v. Taylor*, 462 F.3d 1023, 1025-26 (8th Cir. 2006) (Mr. Taylor abandoned black bag

containing cocaine, where Mr. Taylor fled from police officers and threw bag into nearby backyard, and officers found bag with assistance of drug-sniffing dog); *United States v. Figueroa*, 187 F.3d 623 (Table), 1998 WL 1085825, at \*1-2, \*4-5 (1st Cir. 1998) (per curiam) (Mr. Figueroa had no objectively reasonable expectation of privacy in box containing handgun and drugs, where police went to execute search warrant at Mr. Figueroa's apartment, Mr. Figueroa fled to another apartment in building and left box in that apartment; "We are mindful that . . . the contraband here was discarded in a private residence rather than in a public place. That distinction, however, makes no difference under these circumstances. [Mr.] Figueroa simply stashed the box in the nearest available place in hopes that it would not be discovered by the officers who were in pursuit of him.").

We acknowledge a complication in our reliance upon our decision in *Spriggs* and the out-of-jurisdiction decisions just cited. In *Spriggs*, we affirmed a ruling of the trial court as not clearly erroneous. 618 A.2d at 703. The out-of-jurisdiction decisions just cited all affirmed trial-court rulings and/or conducted de novo review of trial-court rulings as to whether a defendant had an objectively reasonable expectation of privacy. *E.g.*, *Juszczyk*, 844 F.3d at 1213-15 (affirming under de novo review). As we have explained, *supra* at 6, we take as a given for purposes of this case that we are required to affirm the trial court's ruling unless that ruling was

clearly erroneous. Appellate decisions affirming trial-court rulings under deferential or de novo review do not necessarily establish that a contrary trial-court ruling should properly be reversed when the appellate court is instead required to review the trial court's ruling under a deferential standard of review, such as the clear-error standard. *Cf., e.g.*, *Workman v. United States*, 255 A.3d 971, 978 (D.C. 2021) ("Appellate decisions upholding a given exercise of discretion do not necessarily establish that a different exercise of discretion would be impermissible."). Nevertheless, for the reasons that we have stated and that are stated in the decisions we have cited, we conclude that Mr. Kyle clearly lacked an objectively reasonable expectation of privacy in the backpack at the time the backpack was seized and searched.

In reaching that conclusion, we note that we are not aware of any decision holding that a defendant retained a reasonable expectation of privacy in circumstances comparable to those of the present case. Mr. Kyle seeks support from five decisions that he contends are comparable, but we are not persuaded.

First, in *Boswell*, Mr. Boswell, who was not aware that he was being watched by an off-duty police detective, left a television covered by a blanket in a hallway in

his brother-in-law's apartment building and then went next door to a laundromat to make a telephone call. 347 A.2d at 272-73. This court held that Mr. Boswell had not abandoned the television. *Id.* at 274-75. *Boswell* differs from the present case in numerous respects, including that Mr. Boswell was not fleeing from the police, Mr. Boswell did not leave the vicinity of the television, there was evidence that Mr. Boswell had a connection to the place where he left the television, and Mr. Boswell did not throw the television into an area where Mr. Boswell might have been unable to lawfully retrieve it. *Boswell* specifically distinguished situations involving "objects . . . thrown away or discarded in anticipation of a police arrest or interrogation." *Id.* at 275 n.10. Although we need not explore this issue further, we also note that this court has previously questioned the outcome of *Boswell* in light of subsequent Supreme Court decisions. *Godfrey v. United States*, 408 A.2d 1244, 1246-47 & nn.1-2 (D.C. 1979), *amended*, 414 A.2d 214 (D.C. 1980).

Second, in *Shreeves v. United States*, (D.C. 1978), Mr. Shreeves robbed and killed a person in the District of Columbia. *Id.* at 776. The next day, Mr. Shreeves killed another person in Maryland and shot a police officer who had stopped Mr. Shreeves's car to investigate. *Id.* at 776-77. The day after that, police were informed that Mr. Shreeves's car had been parked for seven hours on private land behind a farmers' market. *Id.* at 777. This court held that Mr. Shreeves had not abandoned

the car, concluding instead that Mr. Shreeves had intended to "secrete" the car, in which he had left "a substantial number of his personal belongings." *Id.* at 784-85 (internal quotation marks omitted). Our opinion in *Shreeves* did not explicitly explain why Mr. Shreeves had an objectively reasonable expectation of privacy in the car, instead focusing on whether Mr. Shreeves subjectively intended to give up his interest in the car. *Id.* On the issue of objective reasonableness, *Shreeves* is similar to this case in one significant respect: Mr. Shreeves left his car on private property. *Id.* at 777. This court did not address the significance of that fact, however, and the surrounding details are not described. *Id.* at 777, 784-85. For example, it is unclear whether the private property in *Shreeves* served as a parking lot for the farmers' market. *Id.* It thus is unclear whether Mr. Shreeves would have been a trespasser had he retrieved his car. In any event, *Shreeves* differs from the present case in several important respects: Mr. Shreeves apparently parked his car, which is the normal way that people leave cars, whereas Mr. Kyle threw his backpack into someone else's backyard; and there was no evidence that Mr. Shreeves fled from his car in the sight of police officers, whereas Mr. Kyle did flee from his backpack in the sight of the police.

Third, in *Biles v. United States*, 101 A.3d 1012 (D.C. 2014), Mr. Biles was selling DVDs at a flea market. *Id.* at 1015. He kept the DVDs about eight feet away

from where he was standing, in a box hidden under a backpack, next to a door into the flea market. *Id.* This court held that Mr. Biles had a reasonable expectation of privacy in his belongings. *Id.* at 1024-25. The court explained that Mr. Biles had not "discarded" his belongings, but instead had kept them "protected from view and in his line of sight." *Id.* (brackets and internal quotation marks omitted). This case differs from *Biles* in both of those respects, as well as because Mr. Biles did not flee from police and there was no indication that Mr. Biles would have invaded someone else's property rights by retrieving the DVDs.

The two out-of-jurisdiction decisions that Mr. Kyle emphasizes are distinguishable for similar reasons. In *Young v. State*, 72 P.3d 1250 (Alaska Ct. App. 2003), the court held that Mr. Young did not abandon tissue-paper bundles containing crack cocaine by crouching down to slide them under the locked door of a motel closet and then standing up. *Id.* at 1250-54. In so holding, the court explained that Mr. Young had not thrown the bundles away and did not walk away from the bundles after hiding them. *Id.* at 1254. Similarly, in *People v. Kelly*, 568 N.Y.S.2d 804 (App. Div. 1991), the court held that Mr. Kelly did not abandon a brown paper bag by putting the bag behind a metal flap in the lobby of an apartment building and then walking a short distance out to the building's stoop. *Id.* at 805. *Young* and *Kelly* differ from this case in several important respects. In neither *Young*

nor *Kelly* did the defendant throw the item at issue; in neither case did the defendant then run a substantial distance away from a thrown item; and in neither case was it clear that the defendant would have been unable to lawfully retrieve the thrown item without obtaining a property owner's consent.

We also are not persuaded by the additional points made by the trial court and by Mr. Kyle. First, the trial court noted that the police officers would have been unaware at the time of the incident that Mr. Kyle had thrown his backpack into the yard of a stranger. As the parties agree, however, the objective reasonableness of Mr. Kyle's expectation of privacy must be determined based on all of the circumstances, not only those circumstances known by the police at the time of the search or seizure at issue. *See, e.g.*, *Boswell*, 347 A.2d at 274 (all relevant circumstances should be considered); *United States v. Paradis*, 351 F.3d 21, 32 (1st Cir. 2003) ("When abandonment is argued to show lack of a Fourth Amendment interest, a court inquires into all facts, including those not known to the police at the time of their search. After all, the question is not what the police knew but whether the defendant had a reasonable expectation of privacy in the seized object.") (citation omitted).

Second, the trial court noted that Mr. Kyle's backpack contained personal items that would have been expensive, difficult, or impossible to replace. That fact is most directly relevant to whether Mr. Kyle intended, if possible, to eventually retrieve the backpack, which in turn is relevant to whether Mr. Kyle retained a subjective expectation of privacy in the backpack. We have no occasion to address that issue, however, in light of our conclusion that in any event Mr. Kyle clearly lacked an objectively reasonable expectation of privacy in the backpack. We assume for purposes of our decision that the value of the items inside the backpack has at least some relevance to the objective reasonableness of Mr. Kyle's expectation of privacy. Nevertheless, we do not view the value of the items in the backpack as sufficient to support an objectively reasonable expectation of privacy in the backpack in the circumstances of this case. *See, e.g.*, *Spriggs*, 618 A.2d at 702-03 (holding that Ms. Spriggs abandoned key case containing over $400 worth of heroin and cocaine).

Third, the trial court noted that the closed backpack was not an obviously incriminating item such as an exposed gun or drugs. That fact is relevant to the objective-reasonableness inquiry, but we do not view it as sufficient in the circumstances of this case. The key case in *Spriggs* also was not obviously

incriminating until it was opened. 618 A.2d at 702. The same is true of the various containers at issue in the out-of-jurisdiction cases cited *supra* at pp. 10-12.

Fourth, the trial court noted that Mr. Kyle threw the backpack over a high fence, making the backpack not immediately or readily accessible to the police. That fact also is relevant but does not suffice in the circumstances of this case. Most importantly, Mr. Kyle threw the bag onto a location -- someone else's backyard -- that was readily accessible to the homeowner and that was at least as inaccessible to him as it was to the police. *See, e.g.*, *Juszczyk*, 844 F.3d at 1213-15 & n.3 (no objectively reasonable expectation of privacy in object thrown on another's roof); *Kolia*, 169 P.3d at 985-90 (same); *Carnes*, 967 N.E.2d at 150-53 (same as to object thrown into another's backyard); *Taylor*, 462 F.3d at 1025-26 (same).

Fifth, Mr. Kyle argues that the trial court implicitly found that he intended to hide the backpack. The United States disputes that the trial court made any such finding. We need not resolve that dispute, although we do note that throwing the backpack over a fence while in the sight of a chasing police officer does not seem to be a very effective way of hiding the backpack. Even assuming that Mr. Kyle intended to hide the backpack, we conclude that he clearly lacked an objectively

reasonable expectation of privacy in the backpack given the manner and circumstances in which he did so. *See, e.g.*, *Carnes*, 967 N.E.2d at 150-53 (no reasonable expectation of privacy in backpack Mr. Carnes attempted to hide in bushes in best friend's yard); *Taylor*, 462 F.3d at 1025-26 (same as to bag Mr. Taylor attempted to hide in yard).

Finally, Mr. Kyle argues that a number of the out-of-jurisdiction decisions discussed above are inconsistent with the law of this jurisdiction, because in this jurisdiction abandonment "hinges on the outcome of a factual inquiry into intent." *Spriggs*, 618 A.2d at 703 (internal quotation marks omitted). As we have previously explained, however, the defendant's intent is only half of the inquiry, and a defendant's subjective expectation of privacy must also be objectively reasonable. *E.g.*, *Spriggs*, 618 A.2d at 703 n.3; *Boswell*, 347 A.2d at 274. The out-of-jurisdiction decisions discussed above, which deny relief on the ground that a defendant lacked an objectively reasonable expectation of privacy, are thus entirely consistent with the law of this jurisdiction.

## IV.

For the foregoing reasons, we conclude that Mr. Kyle clearly lacked an objectively reasonable expectation of privacy in his backpack after throwing the backpack into a yard that was not his own, while being chased by police officers. The trial court ruled in the alternative that, even if Mr. Kyle had abandoned the backpack, the evidence recovered from the backpack should be suppressed because the police lacked both a warrant and adequate grounds to seize and search the backpack. We agree with the parties, however, that a party who lacks an objectively reasonable expectation of privacy in an item is not entitled to suppression of evidence obtained as a result of the seizure and search of the item. *See, e.g.*, *Brown*, 97 A.3d at 97 (determination that Mr. Brown lacked reasonable expectation of privacy "forecloses [Mr. Brown's] motion to suppress").

In sum, we reverse the order of the Superior Court granting Mr. Kyle's motion to suppress, and we remand the case for further proceedings.

*So ordered.*